# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AFFINITY HEALTHCARE SERVICES,   :
INC. d/b/a AFFINITY HOME HOSPICE   :
SERVICES *et al.*,   :
  :
    Plaintiffs,   :   Civil Action No.:   10-0946 (RMU)
  :
    v.   :   Re Document Nos.:   16, 19, 26, 28
  :
KATHLEEN SEBELIUS,   :
in her official capacity as Secretary of the   :
U.S. Department of Health and   :
Human Services,   :
  :
    Defendant.   :

## MEMORANDUM OPINION

**GRANTING THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; DENYING THE
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT THE
DEFENDANT'S MOTION TO DISMISS THE ORIGINAL COMPLAINT; DENYING AS MOOT
THE PLAINTIFFS' RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER**

## I.  INTRODUCTION

The plaintiffs are a group of hospice care providers participating in Medicare, a federal

program administered by the Department of Health and Human Services ("HHS").  They

commenced this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553

*et seq.*, challenging HHS's demands for repayment of funds distributed to them purportedly in

excess of the lawful cap on such distributions.

The matter is now before the court on the parties' cross-motions for summary judgment.

The plaintiffs contend that the cap regulation applied by HHS is unlawful because its formula for

calculating a hospice's reimbursement cap conflicts with the terms of the governing statute.  The

defendant, the Secretary of HHS, defends the lawfulness of the reimbursement cap regulation and contends that the court lacks jurisdiction over most of the plaintiffs' claims because they failed to satisfy the amount in controversy requirement, as necessary to establish the agency's jurisdiction over the challenge. For the reasons discussed below, the court grants the plaintiffs' motion for summary judgment and denies the defendant's cross-motion for summary judgment.

## II. BACKGROUND

### A. Framework for Review of Medicare Reimbursement Disputes

Medicare provides health insurance to the elderly and disabled by entitling eligible beneficiaries to have payments made on their behalf for the care and services rendered by health care providers. *See* 42 U.S.C. §§ 1395 *et seq.* Providers are reimbursed for the care they provide to Medicare beneficiaries by insurance companies, known as "fiscal intermediaries," that have contracted with the Centers for Medicare and Medicaid Services ("CMS") to aid in administering the Medicare program. *See id.* § 1395h. Fiscal intermediaries determine the amount of reimbursement due to providers under the Medicare statute and applicable regulations. *See id*. § 1395kk-1.

If the provider is dissatisfied with a fiscal intermediary's determination, and the "amount in controversy is $10,000 or more,"[1] the provider may appeal that determination to the Provider Reimbursement Review Board ("PRRB") within 180 days of its issuance. *Id.* § 1395oo(a). A decision of the PRRB constitutes a final agency ruling, unless reviewed by the CMS Administrator, to whom the HHS Secretary has delegated the authority to review PRRB rulings. *Id.* § 1395oo(f)(1); *see also* 42 C.F.R. § 405.1875. If the Administrator exercises its authority to

---

[1] In the case of group appeals, the aggregate amount in controversy must be $50,000 or more. 42 U.S.C. § 1395oo(b).

reverse, affirm or modify a PRRB ruling, the provider may seek judicial review of the
Administrator's determination in a civil action.  42 U.S.C. § 1395oo(f)(1).

If the intermediary's action involves a question of law that the PRRB lacks the authority
to address, the Medicare statute provides that the PRRB may grant expedited judicial review
("EJR") of that question.  *See id.*  Specifically, the statute states that "[p]roviders shall . . . have
the right to obtain judicial review of any action of the fiscal intermediary which involves a
question of law or regulations relevant to the matters in controversy whenever the Board
determines . . . that it is without authority to decide the question, by a civil action commenced
within sixty days of the date on which notification of such determination is received."  *Id.*  The
statute further provides that such a determination by the PRRB "shall be considered a final
decision and not subject to review by the [Administrator]."  *Id.*

### B.  The Hospice Care Reimbursement Cap

Among other services, Medicare covers hospice care for individuals who are "terminally
ill,"[2] reimbursing hospices for services such as nursing care, physical or occupational therapy,
home health aide services, medical supplies and counseling.  42 U.S.C. § 1395x(dd)(1).  An
individual remains entitled to hospice care benefits so long as he or she is certified as
"terminally ill."  *See id.* § 1395d(d)(1) (establishing that reimbursement for hospice care may be
provided "during two periods of 90 days each and an unlimited number of subsequent periods of
60 days each during the individual's lifetime").

The Medicare statute, however, places a cap on the total amount that Medicare may
distribute to a hospice provider in a single fiscal year (November 1 through October 31).  *See id.*

---

[2]       An individual is "terminally ill" if he or she has "a medical prognosis that the individual's life
expectancy is 6 months or less."  42 U.S.C. § 1395x(dd)(3).

§ 1395f(i)(2)(A). Payments made to a hospice care provider in excess of the statutory cap are

considered overpayments that must be refunded by the hospice care provider. *Id.*

More specifically, the statute provides that the total yearly payment to a hospice provider

may not exceed the product of the annual "cap amount"[3] and the "the number of [M]edicare

beneficiaries in the hospice program in that year." *Id.* For purposes of this calculation,

> the "number of [M]edicare beneficiaries" in a hospice program in an accounting
> year is equal to the number of individuals who have made an election under
> subsection (d) of this section with respect to the hospice program and have been
> provided hospice care by (or under arrangements made by) the hospice program
> under this part in the accounting year, *such number reduced to reflect the
> proportion of hospice care that each such individual was provided in a previous
> or subsequent accounting year* or under a plan of care established by another
> hospice program.

*Id.* § 1395f(i)(2)(C) (emphasis added). Thus, the Medicare statute directs HHS to account for the

fact that an individual may receive care in more than one fiscal year by requiring HHS to count

that individual as a beneficiary in each year in which he or she receives hospice care benefits,

with that number proportionally reduced to reflect care provided in previous or subsequent years.

*Id.*

To implement these statutory cap provisions, HHS promulgated a reimbursement

regulation governing the calculation of the statutory cap amount. *See* 42 C.F.R. § 418.309. In

pertinent part, the regulation provides that the "number of beneficiaries" portion of the statutory

cap calculation includes

> [t]hose Medicare beneficiaries who have not previously been included in the
> calculation of any hospice cap and who have filed an election to receive hospice
> care . . . from the hospice during the period beginning on September 28 (35 days

---

[3]      The statute defines the "cap amount" for a year as "$6,500, increased or decreased . . . by the
same percentage as the percentage increase or decrease, respectively, in the medical care
expenditure category of the Consumer Price Index." *Id.* § 1395f(i)(2)(B). According to the
plaintiffs, the "cap amount" was $20,585.39 for fiscal year 2006 and $21,410.04 for fiscal year
2007. Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 11.

before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

*Id.* § 418.309(b) (emphasis added). The regulation does not provide for the proportional allocation of beneficiaries across years of service. *See id.*

### C. The Plaintiffs' Challenge to the HHS Cap Repayment Regulation

The plaintiffs are a group of Medicare-certified hospice care providers to whom HHS issued cap repayment demands for fiscal years 2006 and 2007. *See generally* Am. Compl.[4] They challenge these repayment demands on the grounds that 42 C.F.R. § 418.309, the regulation pursuant to which the demands were calculated, conflicts with 42 U.S.C. § 1395f(i)(2), the statutory provision the regulation purports to implement. *See generally id.* The plaintiffs assert that whereas the Medicare statute requires HHS to allocate the cap amount across years of service by proportionally adjusting the "number of beneficiaries" in any given year to reflect hospice services provided to an individual in previous and subsequent years, the reimbursement regulation provides that an individual is counted as a beneficiary only in a single year, depending on when he or she first elects hospice benefits. *See id.* ¶¶ 49-59. The plaintiffs allege that as a result, "unused cap amounts in one fiscal year are 'trapped' in the prior year, regardless of whether the beneficiary continues to receive care in subsequent years. The failure to allocate the cap across years of care results in [] understated aggregate hospice cap allowances and, in turn, overstated repayment demands." *Id.* ¶ 57.

---

[4]       This case represents the consolidation of two separate cases: *Destiny Hospice v. Sebelius*, Civ. Action No. 09-2237, and *Affinity Hospice et al. v. Sebelius*, Civ. Action No. 10-946. *See* Minute Order (July 16, 2010). The court consolidated the two cases because the claims raised by the plaintiffs in both actions are substantively identical. *See generally* Compl., *Destiny Hospice v. Sebelius*, Civ. Action No. 09-2237; Compl., *Affinity Hospice v. Sebelius*, Civ. Action No. 10-946. Following consolidation, the plaintiffs jointly filed an amended complaint. *See generally* Am. Compl. For ease of reference, the court will refer to the fifteen plaintiff hospices who originally filed suit in Civil Action 10-946 as "the Affinity plaintiffs."

On September 29, 2009, the PRRB granted plaintiff Destiny Hospice's request for EJR of its challenge to the validity of 42 C.F.R. § 418.309(b). On May 25, 2010, the PRRB granted the Affinity plaintiffs' request for EJR of their group challenge to the same regulation. *Id.* ¶ 11. Destiny Hospice filed a complaint in this court on November 24, 2009, and the Affinity plaintiffs commenced their civil action on June 8, 2010.[5] *See generally* Compl. The court consolidated the two cases on July 16, 2010. *See* Minute Order (July 16, 2010).

### D. The Administrator's Reversal of the PRRB's May 25, 2010 Ruling

On July 19, 2010, the CMS Administrator reversed the PRRB's May 25, 2010 decision granting the Affinity plaintiffs' request for EJR, concluding that Affinity plaintiffs had not established that the aggregate amount in controversy exceeded $50,000,[6] as required to invoke their right to review before the PRRB under 42 U.S.C. § 1395oo(b). Pls.' Mot. at 9; Def.'s Cross-Mot. for Summ. J. & Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Cross-Mot.") at 11; Suppl. Admin. R., *Affinity Hospice v. Sebelius*, Civ. Action No. 10-946 ("Suppl. Affinity A.R.") at 1B-1Q. The Administrator noted that the Affinity plaintiffs had not submitted to the PRRB a proposed calculation demonstrating that under a proportional allocation, their cap repayment obligation would, in the aggregate, be reduced by more than $50,000. Suppl. Affinity A.R. at 1B. Rather, the Affinity plaintiffs had argued before the PRRB that the *entirety* of the 2006 and 2007 cap repayment demands constituted the "amount in controversy" for purposes of their

---

[5]     On June 21, 2010, the plaintiffs filed a motion for a temporary restraining order enjoining HHS from collecting hospice cap repayments for fiscal years 2006 and 2007. *See generally* Affinity Pls.' Mot. for Temporary Restraining Order. The court denied the Affinity plaintiffs' motion on July 1, 2010 on the grounds that the plaintiffs had not established a likelihood of irreparable harm absent interim injunctive relief. *See generally* Mem. Op. (July 1, 2010).

[6]     Because the Affinity plaintiffs were pursuing a group appeal before the PRRB, they were required to establish that the amount in controversy was $50,000 or more. *See* 42 U.S.C. § 1395oo(b).

challenge. *Id.* at 1C. The PRRB concurred, observing that if the regulation were invalidated, the full amount of the each cap demand would be set aside or reduced. *Id.*

In reviewing the PRRB's May 25, 2010 decision, the Administrator stated that the PRRB's "jurisdiction is a primary threshold determination required for a provider to be granted its request for expedited judicial review." *Id.* at 1M-1N (citing 42 C.F.R. § 405.1842(b)). Furthermore, the Administrator noted that Medicare regulations permit the Administrator to review "a Board EJR decision, but only the question of whether there is Board jurisdiction over a specific matter at issue in the decision." *Id.* (citing 42 C.F.R. § 405.1875(a)(2)(iii)). Thus, the Administrator concluded that it had the authority to review the PRRB's threshold determination that the amount in controversy in the Affinity plaintiffs' group appeal exceeded $50,000. *See id.*

The Administrator observed that Medicare regulations provide that in order "to satisfy the amount in controversy requirement . . . for a Board hearing as a group appeal, the group must demonstrate that if its appeal were successful, the total program reimbursement for the cost reporting periods under appeal would increase, in the aggregate, by at least $50,000." *Id.* at 1L (citing 42 C.F.R. § 405.1839(b)). According to the Administrator, the Affinity plaintiffs had made no such showing. *Id.* at 1N-1P. The Administrator noted that the Affinity plaintiffs were not challenging the statutory reimbursement cap itself, merely the regulation adopted by HHS to implement that cap. *Id.* at 1N. Thus, even if the Affinity plaintiffs were to succeed, they would still be subject to a statutory reimbursement cap and, potentially, to some cap repayment obligation. *Id.* Thus, the Administrator concluded, by failing to offer any evidence that their aggregate cap repayment obligation would decrease by more than $50,000 if they were successful in their challenge, the Affinity plaintiffs had failed to establish the PRRB's jurisdiction over their claim. *Id.* at 1O-1P. Specifically, the Administrator noted that

> [p]ursuant to court order, providers in other cases have been able to compare the calculation of the cap amount pursuant to the regulatory method to the calculation of the cap amount pursuant to the alleged "statutory method." In this case, the Group has affirmatively decided not to demonstrate, through this comparison calculation, that the $50,000 amount in controversy is met, but instead incorrectly argued that, if it were successful, the setting aside of the overpayment demand demonstrated that at least $50,000 was in controversy. The Group is in essence seeking relief from any cap, even if temporary. While such relief to have the cap demand temporarily set aside may be the primary goal of the Group, even if its[] alleged "statutory" method results in the same or more of a cap demand, such relief does not constitute meeting the amount in controversy requirement under the regulation.

*Id.*

Accordingly, the Administrator reversed and vacated the PRRB's determination that it had jurisdiction over the Affinity plaintiffs' challenge to the cap repayment regulation. *Id.* at 1P-1Q. The Administrator did not, however, remand the case to the PRRB for additional proceedings. *See id.* at 1P.

On August 9, 2010, the defendant filed a motion to dismiss the Affinity plaintiffs' claims based on the Administrator's reversal of the PRRB's May 25, 2010 ruling. *See generally* Def.'s Mot. to Dismiss. The defendant argued that in light of the Administrator's decision, the PRRB's grant of EJR to the Affinity plaintiffs did not constitute a final agency action subject to judicial review under the APA. *See generally id.* Thus, the defendant argued, the court lacked jurisdiction over the Affinity plaintiffs' claims. *See generally id.*

On August 10, 2010, the plaintiffs filed an amended complaint, in which they assert a supplemental claim challenging the Administrator's reversal of the PRRB's grant of EJR to the

Affinity plaintiffs.[7] *See generally* Am. Compl. More specifically, the plaintiffs seek a declaration and order that "HHS'[s] attempt to 'reverse and vacate' the prior grant of expedited judicial review to the Plaintiffs in the group appeal . . . is unlawful and without effect and/or set aside as improper/erroneous." *Id.* ¶ 9; *see also id.* ¶¶ 36-39.

The plaintiffs filed their motion for summary judgment on August 20, 2010, *see generally* Pls.' Mot.; and the defendant filed its cross-motion for summary judgment and opposition to the plaintiffs' motion for summary judgment on September 3, 2010, *see generally* Defs.' Cross-Mot. & Opp'n to Pls.' Mot. ("Defs.' Cross-Mot."). The parties completed briefing on the cross-motions for summary judgment on September 17, 2010. *See generally* Pls.' Opp'n to Defs.' Mot. & Reply to Defs.' Opp'n to Pls.' Mot. ("Pls.' Opp'n"); Def.'s Reply to Pls.' Opp'n ("Def.'s Reply"). With the parties' cross-motions for summary judgment ripe for disposition, the court turns to the applicable legal standards and the parties' arguments.[8]

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[7]    The filing of an amended complaint renders the original complaint a nullity. *Wultz v. Islamic Republic of Iran*, 2009 WL 4981537, at *1 (D.D.C. Dec. 14, 2009) (citing 6 FED. PRAC. & PROC. § 1476). "A motion to dismiss a complaint that has been subsequently amended is therefore moot." *Id.* (citing *Myvett v. Williams*, 638 F. Supp. 2d 59, 62 n.1 (D.D.C. 2009)); *accord Mass. Mfg. Extension P'ship v. Locke*, 2010 WL 2679835, at *1 (D.D.C. July 7, 2010); *Gray v. D.C. Public Schs.*, 688 F. Supp. 2d 1, 6 (D.D.C. 2010). Thus, because the plaintiffs filed an amended complaint the day after the defendant moved to dismiss the original complaint, the court denies the defendant's motion to dismiss as moot.

[8]    On August 30, 2010, the plaintiffs filed a renewed motion for a temporary restraining order. *See generally* Pls.' Renewed Mot. for Temporary Restraining Order. Because the resolution of the parties' cross-motions for summary judgment disposes of all claims in this action, the court denies as moot the plaintiffs' renewed motion.

and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B. The Court Vacates the Administrator's Reversal of the
### PRRB's Jurisdictional Determination

The plaintiffs assert that the court should vacate the Administrator's reversal of the PRRB's determination that it had jurisdiction over the Affinity plaintiffs' challenge. *See* Pls.' Mot. at 11-20; Pls.' Opp'n at 6-17. The plaintiffs contend that the Administrator lacks the authority to reverse and vacate the PRRB's grant of EJR on jurisdictional grounds because the Medicare statute precludes further administrative review of EJR determinations. Pls.' Mot. at 11-20; Pls.' Opp'n at 7-11. Furthermore, the plaintiffs assert that even if the Administrator possessed the authority to review EJR determinations, the Administrator's decision to reverse and set aside the EJR granted to the Affinity plaintiffs was arbitrary and capricious and should therefore be set aside. Pls.' Opp'n at 11-17.

The defendant maintains that the Administrator has the authority to review the PRRB's jurisdictional determinations even after the PRRB has granted EJR. Def.'s Cross-Mot. at 14-20; Def.'s Reply at 2-10. Furthermore, the defendant asserts that the Administrator's decision to reverse and vacate the jurisdictional component of the PRRB's May 25, 2010 EJR decision was reasonable and supported by substantial evidence. Def.'s Cross-Mot. at 20-25; Def.'s Reply at 10-14.

The court first considers the plaintiffs' contention that the Administrator lacks the authority to vacate EJR grants on jurisdictional grounds. The parties' dispute on this issue centers on the following statutory provision, which governs grants of EJR:

> Providers shall . . . have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received. If a provider of services may obtain a hearing under subsection (a) of this section and

has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the [Administrator]. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing.

42 U.S.C. § 1395oo(f)(1).

HHS has acknowledged that this provision bars the Administrator from reviewing a determination by the PRRB that a challenge involves a question of law it lacks the authority to resolve ("a no authority determination"). *See* 42 C.F.R. § 405.1875(a)(2)(iii) (providing that "the Administrator may not review the Board's determination in a decision of its authority to decide a legal question relevant to the matter at issue"). Yet, under the HHS's interpretation of the statutory provision, before the PRRB may make a no authority determination, the PRRB must first determine that it has jurisdiction over the provider's challenge. *See id.* § 405.1842(b)(1) ("The Board . . . must find that the Board has jurisdiction over the specific matter at issue before the Board may determine its authority to decide the legal question."); *id.* § 405.1842(e)(1) ("If the Board makes a finding that it has jurisdiction to conduct a hearing on a specific matter at issue . . . then (and only then) it must consider whether it lacks the authority to decide a legal question relevant to the matter at issue."). This antecedent determination, according to HHS, is not insulated from administrative review by the Administrator. *See id.* § 405.1875(a)(2)(iii) (stating that the Administrator may review "[a] Board EJR decision, but only the question of whether there is Board jurisdiction over a specific matter at issue in the decision"); *id.* § 405.1842(g)(1) (providing that the Administrator "may review, on his or her own motion, or at

the request of a party, the jurisdictional component only of the Board's EJR decision"). The defendant therefore argues that the Administrator acted within its authority when it vacated the PRRB's May 10, 2010 EJR determination after concluding that the Affinity plaintiffs had not satisfied the amount in controversy requirement. Def.'s Cross-Mot. at 14-20; Def.'s Reply at 2-10.

To determine whether HHS's interpretation of the statutory provision is valid under the APA, the court employs the familiar two-step inquiry established in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The first step of the *Chevron* inquiry requires the court to consider "whether Congress has spoken to the precise question at issue." *Id.* at 842. If so, the court ends its inquiry. *Id.* at 842-43 (observing that "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 512 (1996) (observing that "where the language of the statute is clear, resort to the agency's interpretation is improper"). If, on the other hand, the statute "is silent or ambiguous with respect to the specific issue," the second step requires the court to defer to the agency's position, so long as it is reasonable. *Chevron*, 467 U.S. at 843; *NetCoalition v. Secs. Exch. Comm'n*, 615 F.3d 525, 533 (D.C. Cir. 2010) (noting that under step two of the *Chevron* inquiry, it is irrelevant that the court may have reached a different – or better – conclusion than the agency); *see also Sea-Land Servs., Inc. v. Dep't of Transp.*, 137 F.3d 640, 645 (D.C. Cir. 1998) (holding that "[*Chevron*] deference comes into play of course, only as a consequence of statutory ambiguity, and then only if the reviewing court finds an implicit delegation of authority to the agency"). The agency's interpretation "governs if it is a reasonable interpretation of the statute – not necessarily the only possible interpretation, nor even the

interpretation deemed *most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 129 S. Ct. 1498, 1505 (2009).

Accordingly, the court first considers whether Congress clearly expressed its intent as to whether the Administrator may vacate an EJR determination on jurisdictional grounds. *See Chevron*, 467 U.S. at 842; *cf. Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) (noting that "deference to [the agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent"). Although the EJR provision does not specifically state whether the Administrator may review the PRRB's assessment of jurisdiction, the provision is not silent or ambiguous with respect to the issue. *See* 42 U.S.C. § 1395oo(f)(1). To the contrary, the EJR provision begins by stating that providers

> shall . . . have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy *whenever* the Board determines . . . that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received.

*Id.* (emphasis added).

Although neither party devotes significant attention to this opening sentence of the EJR provision, this straightforward statement constitutes an unambiguous expression of legislative intent. *See id.* More specifically, by stating unequivocally that judicial review shall be available "whenever" the PRRB determines that it lacks the authority to decide a question of law, the provision indicates that Congress intended for providers to have access to judicial review *any time* that the PRRB makes a no authority determination, so long as the provider timely commences a civil proceeding. *See id.*; *see also Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000) (stating that "when the statute's language is plain, the sole

function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms" (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989))) (internal quotation marks omitted); OXFORD ENGLISH DICTIONARY (2d ed. 1989) (defining "whenever" as "[a]t any time when; every time that, as often as").[9]

The remainder of the EJR provision is consistent with and, indeed, amplifies the clearly expressed legislative intent for unimpeded judicial review following a no authority determination by the PRRB. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (stating that "[i]n making the threshold determination under *Chevron*, 'a reviewing court should not confine itself to examining a particular statutory provision in isolation'" as the meaning or ambiguity of a provision "may only become evident when placed in context"). The provision states that once the PRRB determines that it lacks the authority to resolve a question of law implicated by the provider's challenge, such a determination "shall be considered a final decision and not subject to review by the [Administrator]." *Id.* Furthermore, the provision states that in those situations in which a provider requests EJR, the PRRB must rule on such a request within thirty days, and if the PRRB fails to act within the designated timeframe, the provider may immediately commence a civil proceeding. *Id.* Taken as a whole, the EJR provision establishes a framework under which providers have recourse to immediate judicial review *whenever* the PRRB makes a no authority determination, without the obstacle of additional review at the administrative level, so long as they commence a civil action within sixty days of the PRRB's determination. *See id.*

This Congressional intent is also reflected in the legislative history of the provision. The House Report that accompanied the enactment of the EJR provision states as follows:

---

[9]     *Available at* http://dictionary.oed.com/cgi/entry/50284289?query_type=word&queryword=whenever&first=1&max_to_show=10&sort_type=alpha&result_place=2&search_id=WYIH-BijEx8-6359&hilite=50284289.

Title VIII authorizes the Provider Reimbursement Review Board to determine, on its own motion or at the request of a provider of services, whether it has jurisdiction over an issue brought before it by the provider. On the basis of a determination by the Board that it is without authority to decide the question (or if the Board fails to render such a determination within 30 days of the provider's request), *the provider will be permitted to commence a civil action with respect to the matters in controversy without further administrative review.*

Under present law, a provider's dissatisfaction with a particular determination made by its fiscal intermediary on the basis of a regulation issued by the Secretary must first be brought to the Board, even though the Board may not have the authority to reverse or overrule the regulation. (The Board has no authority, for example, to rule on the legality of the Secretary's regulations but it must, nonetheless, conduct a full review of the challenge.) The effect of this process has been to delay the resolution of controversies for extended periods of time and to require providers to pursue a time-consuming and irrelevant administrative review merely to have the right to bring suit in a U.S. district court. Title VIII addresses this problem by giving Medicare providers *the right to obtain immediate judicial review in instances where the Board determines that i[t] lacks jurisdiction to grant the relief sought.*

H.R. Rep. No. 96-1167, at 394 (1980) (emphasis added).

Likewise, the relevant House Conference Report states that the EJR provision "requires the Board, when requested by a provider, to determine within 30 days whether it has jurisdiction over an issue brought before it by a provider . . . and authorizes judicial review *without further administrative review where the Board decides it lacks jurisdiction*." H.R. Rep. 96-1479, at 136 (1980) (Conf. Rep.) (emphasis added). These legislative reports reflect that Congress intended for providers to have an avenue for obtaining immediate judicial review, without additional administrative proceedings, whenever the PRRB makes a no authority determination.

The defendant maintains that the Administrator possesses the authority to review the jurisdictional component of an EJR determination, citing the portion of the EJR provision stating that a provider may request an EJR only if it "may obtain a hearing" before the PRRB. Def.'s Cross-Mot. at 15; Def.'s Reply at 3-4. The defendant suggests that this language requires the PRRB to make a determination as to whether the provider has met the prerequisites for PRRB

16

jurisdiction, such as the amount in controversy requirement. Def.'s Cross-Mot. at 13-15. This jurisdictional determination, the defendant argues, is like any other determination made by the PRRB and reviewable by the Administrator. *Id.* The defendant asserts that nothing in the EJR provision expressly prohibits the Administrator from reviewing this jurisdictional determination, as the provision merely precludes further administrative review of the PRRB's determination that it lacks the authority to resolve a question of law, not the separate determination that it has jurisdiction. *Id.* at 16.

The court concurs with the defendant that the EJR provision conditions a provider's right to request EJR on its satisfaction of the requirements for a hearing before the PRRB. *See* 42 U.S.C. § 1395oo(f)(1). Thus, if the PRRB were to determine that a provider requesting an EJR had not satisfied the amount in controversy requirement, the PRRB would be authorized, if not compelled, to deny the request. *See id.* In such a case, the PRRB would not reach the question of whether the provider's challenge raises a question of law that it lacks the authority to resolve.

It does not, however, follow that if the PRRB determines that the provider *has* satisfied the amount in controversy requirement and goes on to make a no authority determination, the Administrator may nonetheless review the PRRB's jurisdictional determination. If the Administrator were to vacate the jurisdictional determination underlying the PRRB's grant of expedited judicial review, that administrative reversal would potentially have the effect of precluding judicial consideration of the provider's underlying challenge; indeed, that is precisely the defendant's position here. *See* Def.'s Cross-Mot. at 14-20 (arguing that the court lacks jurisdiction over the Affinity plaintiffs' substantive claims because of the Administrator's decision reversing the PRRB's jurisdictional determination). Yet, as noted, the EJR provision expressly states that a provider may obtain judicial review of the fiscal intermediary's action

whenever the PRRB makes a no authority determination, without further qualification, so long as it commences a timely civil action. 42 U.S.C. § 1395oo(f)(1). Accordingly, the Administrator's effort to vacate the PRRB's "jurisdictional determination" is not consistent with the clearly expressed legislative intent underlying the EJR provision. *See Wilcox v. Ives*, 864 F.2d 915, 925 (1st Cir. 1988) (observing that deference to an agency's interpretation of a statute "is appropriate only if the agency's interpretation is consistent with the language, purpose, and legislative history of the statute").

The cases relied on by the defendant do not persuade the court to reach a different conclusion. *See* Def.'s Cross-Mot. at 17-20. Several of these cases stand for the uncontroversial proposition that a provider requesting an EJR must establish the PRRB's jurisdiction and do not address situations in which the PRRB reached a determination that it lacked the authority to resolve a question of law. *See Lester E. Cox Med. Ctrs. v. Sebelius*, 691 F. Supp. 2d 162, 168 (D.D.C. 2010) (affirming the PRRB's dismissal of the provider's request for EJR because the provider failed to appear at a hearing to determine the PRRB's jurisdiction); *Three Lower Counties Cmty. Health Servs. Inc. v. U.S. Dep't of Health & Human Servs.*, 517 F. Supp. 2d 431, 435 n.4 (D.D.C. 2007) (stating that the provider did not qualify for an EJR because it failed to submit a claim for benefits to the PRRB); *Alexandria Hosp. v. Bowen*, 631 F. Supp. 1237, 1244 (W.D. Va. 1986) (upholding a regulation providing that the thirty-day time limit for the PRRB to rule on an EJR request does not begin to run until the PRRB makes its jurisdictional determination). Those cases cited by the defendant that at least touch upon the Administrator's authority to review the jurisdictional component of an EJR decision contain no analysis or discussion of the issue. *See Anaheim Mem'l Hosp. v. Shalala*, 130 F.3d 845, 851 (9th Cir. 1997) (stating that the jurisdictional component of the PRRB's EJR decision "was simply another

Board decision subject to review by the Administrator" without providing any analysis or explanation regarding the basis for the Administrator's authority); *Lenox Hill Hosp. v. Shalala*, 131 F. Supp. 2d 136, 138-41 (D.D.C. 2000) (assuming based on the applicable regulation that "the jurisdictional component of the Board's decision is reviewable by the Administrator").[10]

Indeed, the only case cited by the defendant that squarely addresses the Administrator's authority to review the jurisdictional component of an EJR decision is an unpublished decision from the Northern District of California. *See S.F. Gen. Hosp. v. Shalala*, 2000 WL 1721082, at *2-5 (N.D. Cal. Oct. 2, 2000) (holding that the Administrator possessed the authority to reverse the PRRB's jurisdictional determinations). That decision, however, contains no discussion of the fact that the EJR provision states that judicial review shall be available *whenever* the PRRB makes a no authority determination. *See id.* And although the decision suggests that a provider could simply amend its complaint to challenge the Administrator's reversal, *id.* at *5, this roundabout avenue for judicial review does not bring the court's interpretation in line with the plain language of the EJR provision. For if a court were to uphold the Administrator's reversal, it would never review the provider's underlying challenge to the fiscal intermediary action and the related question of law, despite the fact that the EJR provision conditions such judicial review solely on the commencement of a timely civil action following the no authority determination by the PRRB, *see* 42 U.S.C. § 1395oo(f)(1). Accordingly, this court declines to adopt the reasoning of that case.

---

[10] The defendant suggests that in this court's prior ruling in *Russell-Murray v. Sebelius*, 2010 WL 2814411 (D.D.C. July 20, 2010), the court affirmed the Administrator's authority to review the jurisdictional component of an EJR decision. Def.'s Reply at 2, 10. In that case, however, neither party disputed the Administrator's authority to review the PRRB's jurisdictional determination, and the court merely pointed out that HHS had declined to utilize its purported authority to reverse the PRRB's jurisdictional determination. *Russell-Murray*, 2010 WL 2814411, at *11 n.14.

In sum, the Administrator's effort to reverse and vacate the PRRB's grant of EJR to the Affinity plaintiffs is not consistent with the unambiguous legislative intent underlying the EJR provision. If permitted to stand, the Administrator's reversal of the PRRB's determination would deny the provider immediate judicial review of the fiscal intermediary's actions, despite the PRRB's determination that it lacked the authority to resolve the question of law underlying the challenge. As nothing in the EJR provision expressly or impliedly delegates the authority to review the jurisdictional component of an EJR decision to the Administrator, such outcome would be inconsistent with plain language of the EJR provision. *See* 42 U.S.C. § 1395oo(f)(1); *Sea-Land Serv.*, 137 F.3d at 645 (observing that "[*Chevron*] deference comes into play . . . only as a consequence of statutory ambiguity, and then only if the reviewing court finds an implicit delegation of authority to the agency"). Thus, because the Administrator's reversal fails under the first step of the *Chevron* analysis, the court vacates the Administrator's decision and sets it aside. The court therefore proceeds to consider the merits of the plaintiffs' challenge.[11]

### C. The Court Grants the Plaintiffs' Motion for Summary Judgment and Denies the Defendant's Cross-Motion for Summary Judgment on the Validity of the Challenged Cap Reimbursement Regulation

#### 1. The Challenged Regulation Is Invalid

The plaintiffs contend that the challenged repayment demands must be set aside because the regulation on which they were based, 42 C.F.R. § 418.309(b)(1), impermissibly conflicts with 42 U.S.C. § 1395f(i)(C)(2), the statutory provision it purports to implement. *See* Pls.' Mot.

---

[11]    The defendant briefly argues that if the court vacates the Administrator's determination, "the proper remedy is remand for further proceedings consistent with the court's opinion." Def.'s Cross-Mot. at 33. The court fails to see what purpose remand would serve under these circumstances and, for the reasons already discussed, such an outcome would be inconsistent with the plain language of the EJR provision. *See* 42 U.S.C. § 1395oo(f)(1). Accordingly, the court declines to remand the Affinity plaintiffs' claims and proceeds to consider the merits of the plaintiffs' challenge.

at 26-32; Pls.' Opp'n at 17-20.  More specifically, they allege that the regulation is invalid because it fails to proportionally allocate beneficiaries across years of service provided, as the statute expressly requires.  Pls.' Mot. at 26-32.  Although the defendant disputes the plaintiffs' assertions, it concedes that this court has already held the cap reimbursement regulation invalid. Def.'s Cross-Mot. at 26 (citing *Russell-Murray v. Sebelius*, 2010 WL 2814411 (D.D.C. July 20, 2010)).  Rather than submitting further briefing on the same arguments, the defendant incorporates by reference the arguments it made in connection with the *Russell-Murray* case.  *Id.*

As this court noted in *Russell-Murray*, every court that has considered the issue has held that the cap reimbursement regulation impermissibly conflicts with the unambiguous terms of the statute.  *Russell-Murray*, 2010 WL 2814411, at *13 (concluding that the cap reimbursement regulation is invalid); *see also Tri-County Hospice, Inc. v. Sebelius*, 2010 WL 784836, at *3 (E.D. Okla. Mar. 8, 2010) (noting that the question of the regulation's invalidity was "well-trod ground").  The parties' arguments in this case mirror those raised in *Russell-Murray*.[12]  *See id.*; Pls.' Mot. at 26-32; Def.'s Cross-Mot. at 26.  For the reasons articulated in that ruling, the court once again concludes that the hospice cap reimbursement regulation is invalid and constitutes an abuse of agency discretion.

---

[12]     In a footnote to its cross-motion for summary judgment, the defendant suggests that Destiny Hospice lacks standing because it did not submit a calculation demonstrating that the application of a proportional application would result in a monetary benefit to the hospice.  Def.'s Cross-Mot. at 26 n.17.  Yet, as the defendant acknowledges, this court concluded in *Russell-Murray* that hospices have standing to challenge the cap reimbursement regulation simply by virtue of the fact that they are being directly subjected to an unlawful regulation.  *See Russell-Murray*, 2010 WL 2814411, at *8 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)).  For the reasons discussed in that ruling, the court rejects the defendant's challenge to Destiny Hospice's standing.

### 2. The Relief Requested

#### a. Injunctive Relief

The plaintiffs request that the court enter an injunction prohibiting HHS from using the invalid reimbursement regulation to calculate the plaintiffs' cap liability. *See* Pls.' Mot., Proposed Order; Pls.' Opp'n at 18. The defendant objects to the plaintiffs' request for an injunction barring the prospective use of the regulation, arguing that such an order would grant the plaintiffs relief for challenges to cap determinations and cost years that have not been exhausted at the administrative level. Defs.' Cross-Mot. at 27.

Once a reimbursement challenge has reached the end of the administrative review process, the subsequent judicial action is governed by the terms of the APA. *See* 42 U.S.C. § 1395oo(f)(1). The APA authorizes the court to enjoin unlawful agency action. *See* 5 U.S.C. § 702 (waiving the government's sovereign immunity to suits by individuals suffering a legal wrong because of agency action and "seeking relief other than money damages"). Indeed, numerous courts have, after holding the cap reimbursement regulation invalid, entered injunctions barring HHS from prospectively using the regulation against the hospice plaintiff. *See Legal Health Care, Inc. v. Sebelius*, 2010 WL 3258131, at *1 (D. Utah Aug. 17, 2010); *Russell-Murray*, 2010 WL 2814411, at *11; *Hospice of N.M., LLC v. Sebelius*, 691 F. Supp. 2d 1275, 1295 (D.N.M. 2010); *Lion Health Servs. v. Sebelius*, 689 F. Supp. 2d 849, 858 (N.D. Tex. 2010); *Compassionate Care Hospice v. Sebelius*, 2010 WL 2326216, at *5 (W.D. Okla. June 7, 2010).

Although the defendant cites a number of cases standing for the proposition that the court may grant relief in reimbursement challenges only with respect to matters over which it has jurisdiction, none of those cases concerned a facial attack on the validity of a regulation. *See,*

*e.g.*, *Shalala v. Ill. Council on Long Term Health*, 529 U.S. 1, 10-20 (2000) (holding that providers may not bypass altogether the administrative review process and bring a reimbursement challenge in the district court under 28 U.S.C. § 1331); *Riley Hosp. & Benevolent Ass'n v. Bowen*, 804 F.2d 302, (5th Cir. 1986) (holding that the court lacked jurisdiction to award interest under 42 U.S.C. § 1395oo(f)(2) for cost years that were not administratively exhausted) Here, the very question that has been funneled through the administrative process and is now before the court is the Administrator's authority to utilize 42 C.F.R. § 418.309(b)(1) in calculating the plaintiffs' reimbursement cap. *See generally* Am. Compl. Having answered that question by determining that the regulation is invalid and that the Administrator may not rely on it, *see supra* Part III.C, the court enjoins HHS from continuing to use the regulation to calculate the plaintiffs' hospice cap liability.

### b. Monetary Relief

Having concluded that the cap reimbursement regulation is invalid, it follows that the cap repayment demands at issue in this case, which were calculated based on that invalid regulation, are also invalid and unlawful. Accordingly, the court sets aside the cap repayment demands issued to all of the plaintiffs for 2006, as well as the cap repayment demands issued to plaintiffs Destiny Hospice and Hospicio Toque de Amor for 2007.

The question remains as to what to do with the monies that the plaintiffs have already paid to HHS pursuant to these set aside demands. The plaintiffs contend that the court should direct HHS to return these monies or credit any portion of such prior payments to new cap repayment demands issued to the plaintiffs. Pls.' Mot., Proposed Order; Pls.' Opp'n at 21-24. The defendant argues that the court should remand the matter to HHS, as it did in the *Russell-*

*Murray* case, so that the PRRB can recalculate the plaintiffs' cap repayment obligation using the proportional method called for in the statute. Def.'s Cross-Mot. at 34; Def.'s Reply at 20-24.

Once a court concludes that an agency has committed an error of law, the normal remedy is remand. *See Immigration & Naturalization Serv. v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002); *BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of the Currency*, 467 F.3d 871, 873-74 (5th Cir. 2006) (observing that when an agency action is "based upon a conclusion of law that the district court subsequently rejected" a remand to the agency "is usually required"). Indeed, the majority of district courts that have held the hospice cap regulation invalid have denied the hospice's request to order the return of all monies paid to HHS pursuant to set aside reimbursement demands and remanded the matter to the agency for further proceedings. *See Hospice of N.M., LLC*, 691 F. Supp. 2d at 1294; *Compassionate Care Hospice*, 2010 WL 2326216, at *5; *Tri-County Hospice, Inc.*, 2010 WL 784836, at *3; *IHG Healthcare v. Sebelius*, 2010 WL 2380743, at *12 (S.D. Tex. June 13, 2010); *Russell-Murray*, 2010 WL 2814411, at *13.

Although the plaintiffs argue that remand would be inappropriate because the agency lacks the authority to perform a "sub-regulatory" calculation of the plaintiffs' reimbursement obligation, *see* Pls.' Opp'n at 21-24, the Supreme Court has observed that the PRRB may properly interpret statutory directives as part of its normal adjudicative process, even in the absence of a regulation speaking to the precise issue in dispute, *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96-97 (1995). Indeed, as the defendant points out, HHS has in fact performed such a calculation when directed to do so by a court. *See Autumn Bridge, LLC v. Blue Cross Blue Shield Ass'n*, PRRB Dec. No. 2010-D8 (Decision of the Administrator) (Jan. 21, 2010), *available at* http://www.cms.gov/officeattorneyadvisor/downloads/2010-D8.pdf.

Accordingly, the court remands this matter to the HHS for a recalculation of the plaintiffs' cap liability for the years at issue.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for summary judgment, denies the defendant's cross-motion for summary judgment and denies as moot the defendant's motion to dismiss the original complaint and the plaintiffs' renewed motion for a temporary restraining order.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 25th day of October, 2010.

RICARDO M. URBINA
United States District Judge